SHAFFNER, Respondent, v. CITY OF ST. LOUIS, Appellant.

1. In proceedings under the amended charter of the city of St. Louis, of February 23, 1853, (Rev. Ord. 1856, p. 157,) the city is made primarily liable for only the damages assessed on account of the benefit that will result from the improvement to the public generally, and the city can not be held primarily so liable for the amount of benefits assessed against individuals.
2. Proceedings under such statute to deprive an individual of his property without his consent should be conducted in strict conformity to the requirements of the act which authorizes them, and if not so conducted they are null and void.

*Appeal from St. Louis Circuit Court.*

The facts will appear in the opinion of the court. These are the instructions asked by the appellant, and refused in the court below: " 1. That the proceedings under which it is alleged that the property of the plaintiff was condemned for public use is null and void, and the plaintiff can not recover in this action on account thereof. 2. That under the charter of the city relating to the opening and improving streets, the city is only liable to the party whose property is condemned for public use to the extent of the amount assessed against the city on account of the value to the public generally of the proposed improvement, together with the amount collected by the city from the owners of the property against whom benefits have been assessed. 3. That in no event can the plaintiff recover in this action over and above the amount assessed by the jury as the value of the improvement to the public generally, together with the amounts actually paid to the city by those assessed with benefits. 4. That by the amended city charter of St. Louis, approved

February 23, 1853, it is provided that the mayor shall appoint a day for empannelling a jury and ascertaining the damages, at least six days notice of which shall be given to the person whose property is proposed to be taken; and if any of the owners are unknown, can not be found by the marshal of the city, or are absent from the city, publication thereof shall be made in at least two of the city daily newspapers for at least four weeks before the day appointed, notifying all owners and others interested in the property proposed to be taken and in the improvements to be made, that on the day therein named the mayor will cause the property therein described to be condemned for public use, and the court is asked to declare as the law of this case, that if from the evidence no such notice was given to any of the parties interested in said proceeding, then neither the city nor the public have acquired any right to the property of the plaintiff, and the plaintiff can not recover in this action. 5. That if it appear from the evidence that no notice whatever of the empannelling of the jury was given by publication or otherwise to the person or persons assessed by the jury with benefits, then the judgment rendered by the mayor against such person or persons is null and void, and the city has no legal right to collect the same, and the plaintiff is not entitled to recover on account of the same. 6. That by the charter of the city of St. Louis, regulating the proceedings in regard to the opening of the street which is the subject matter of controversy in this suit, the city is made the trustee to collect and pay over to plaintiff the amounts assessed against persons for benefits, and the plaintiff can not recover in this action for money not collected or received by the city.

*W. V. N. Bay*, (city counsellor,) for appellant.

I. In proceedings to take private property for public use under the provisions of positive law, every requisite of the statute must be complied with, and should appear on the face of the proceedings under which the property is attempted to be taken. No right or title to the property can be acquired

except by a strict observance of the statutory provisions, and an omission of the statute requisite is fatal. (Angell on Highways, 188, 167 ; Hebert v. Frisbie, 5 Conn. 592 ; Parker v. Rule's Lessee, 9 Cranch, 64 ; Metcalf v. Gillet, 5 Conn. 400.) Thus when the statute provided that real estate taken by execution should be appraised by indifferent freeholders of the town where the lands lie, it has been held that when one of the appraisers was not indifferent or did not reside in the town where the lands lay, the appraisement was void, notwithstanding they were selected and agreed upon by the parties with a full knowledge of such disqualification. The agreement of the parties not being sufficient to make that good which the law maketh void. (Mitchell v. Kirtland, 7 Conn. 229 ; Metcalf v. Gilbert, 5 Conn. 400, 403 ; Chapman v. Griffin, 1 Root, 191 ; Co. Litt. 51, *b.*)

II. Ordinance 1752 fixed the line of South Twelfth street from Gratiot to Chouteau avenue, and ordinance 3548 directed the mayor to proceed and open the street in accordance with ordinance 1752. The mayor gave notice under the city charter by publication that he would empannel a jury to assess damages and benefits on the 24th of October, 1856. The record shows that the mayor did not proceed or attempt to empannel a jury until the 6th of November, 1856. It is contended by appellant that the omission to empannel the jury on the day named in the notice is fatal, and renders all proceedings had thereafter null and void. He should at least have commenced empannelling the jury on the day specified in the notice.

III. The jury empannelled on the 6th of November made no verdict, but recommended to the mayor that it was advisable to make a change in the line of the street; thereupon the mayor, on the 10th of November, 1856, discharged the jury, *sine die*, and reported their recommendation to the council. It is insisted by appellant that upon the discharge of the jury they were *functus officio*, and the mayor had no power or authority to recall and empannel them again on a subsequent day.

IV. Ordinance 3752, approved December 5, 1856, adopted the change proposed by the jury and repealed ordinance 3548, under which the mayor gave notice. As no notice whatever, by publication or otherwise, was given any person of the intention of the mayor to empannel a jury under ordinance 3752, we insist that all proceedings had by the mayor thereafter in relation to the opening of South Twelfth street were null and void and could not operate to condemn the property of Shaffner, or affect in any degree his interest or title in the property.

V. If the proceedings are null and void, then we insist that neither the city nor the public at large required the easement or any right whatever in the property of Shaffner, and consequently Shaffner can not maintain an action against the city for the property.

VI. The city never took possession of the property, but the possession remained in Shaffner, he (Shaffner) receiving the rents, issues and profits. It is submitted that under the charter of the city no cause of action could accrue until the city took possession, even if the proceedings under the attempted condemnation had been valid.

VII. The parties to be assessed with benefits as well as the parties whose property is to be taken have a right to be heard before the jury and to introduce any evidence touching their interests. It is contended that the omission to make the publication provided by charter was calculated to deprive them of this right, and, in the absence of any testimony showing that they were advised of the proceeding, the court will presume that it was conducted without their knowledge. (Angell on Highways, p. 77.))

VIII. Upon the condemnation of private property for a street, the public only require the easement or right of way. The owner retains the fee and all rights of property not incompatible with the public enjoyment, and when the highway is abandoned, recovers his original unencumbered dominion. (Angell on Highways, ch. 7, p. 281; Perley v. Chandler, 6 Mass. 454; Jackson v. Hathaway, 15 Johns. 447; Casler-

gan v. Van Brundt, 2 Johns. 357 ; Gednay v. Earl, 12 Wend. 98 ; Willoughby v. Jenks, 20 Wend. 96 ; Peck v. Smith, 1 Conn. 103.) This common law doctrine is not infringed upon by the charter of St. Louis. The soil and freehold remain in the owner of the ground, and the public at large acquire simply the easement. The city in her corporate capacity acquires no right except to improve and keep the street in repair, and to prevent and remove all encroachments on the same. She is taxed, as well as the owners of the property benefitted, for the value of the easement.

IX. If the plaintiff has any cause of action, he can only recover to the extent of the amount awarded by the verdict of the jury in the mayor's court, to be paid by the city as the value of the improvement to the public generally, in addition to the amount that the city may have collected from persons assessed with benefits. The record shows that the assessed value of the property of Shaffner, taken for the improvement, was $16,830. To pay this amount the jury assessed against the city the sum of $1,431.80. The city collected from parties assessed with benefits the sum of $7,447.90, which, added to the amount awarded to be paid by the city, makes the sum total of $8,879.70, and it is insisted by the appellant that even if the proceedings had by the mayor were regular and lawful, still the plaintiff was not entitled to recover in the court below against the city a sum exceeding $8,879.70 ; whereas the judgment is for the sum of $18,134.25.

X. Under the city charter the city is made the mere agent or trustee to collect the benefits as assessed by the jury, and can only be liable to Shaffner to the extent of the money so collected. The city did collect part, which was voluntarily paid by some of the parties, but the Land Court has perpetually enjoined the city from collecting the balance, upon the ground that there was no legal condemnation of the property. We, therefore, insist that Shaffner is not entitled to recover against the city for money never received by the city, and which the city is enjoined from collecting.

*Krum & Harding*, for respondent.

I. The facts established in evidence in this case show a legal liability on the part of the appellant, and the instruction given by the court below at the instance of the respondent enunciates the law correctly. The benefits assessed on account of the opening of the street in question were not collected by reason of the neglect and fault of the appellant. The appellant originated the proceedings to open the street in question; by the act of approving the assessment and making the appropriation to be paid out of the city treasury, the street became dedicated to public use. The respondent was powerless to coerce the collection of the benefits assessed.

II. The appellant can not question the regularity or validity of its own proceedings in respect to the opening of the street in question. The respondent, by demanding the amount assessed as the value of his property taken for the street, virtually consented to the proceedings. Under the evidence, as between the parties to this suit, it is not a material question whether the proceedings to open the street were regular or not. The instructions, therefore, of the appellant respecting the regularity or validity of the proceedings of the city to open the street in question were properly overruled.

SCOTT, Judge, delivered the opinion of the court.

This was an action brought by the plaintiff, Shaffner, against the City of St. Louis, for the sum of $16,830, damages to the plaintiff, assessed for opening South Twelfth street from Chouteau avenue to Gratiot street.

The amended charter of the city of St. Louis, approved February 23, 1853, and March 5, 1855, in relation to the opening and improving streets, section 4, enacts that it shall be the duty of the jury, first, to ascertain the actual value of the land proposed to be taken for the opening, widening, or altering of a lane, alley, street, avenue, wharf, or public

18—VOL. XXXI.

square, without reference to the proposed improvement; then, for the payment of such sum, to assess against the city the value to the public generally of the proposed improvement and to assess the balance against the owner or owners of the property fronting on such lane, alley, street, avenue, wharf or square, and of the property benefitted, according to the value of the property so assessed and in the proportion that the owners thereof may be respectively benefitted by the proposed improvement; and the sum or sums to be paid by the owner or owners of property respectively benefitted by the improvements, as ascertained by the jury, shall be a lien or liens upon the property so charged and shall be collected as provided by ordinance. Sec. 6. If the verdict of the jury is not set aside by the mayor, it shall be his duty, within four months, to report the same to the council, and if an appropriation is made by the council within three months thereafter to pay the sum or sums awarded to be paid by the city, it shall then be lawful for the city to take possession of the ground so condemned to public use.

Conceding, as the plaintiff contends, that the damages he claims from the city have been assessed according to the foregoing provisions of the charter and of the ordinances passed in pursuance thereto, we cannot see the ground on which this action can be sustained. Certainly the charter only makes the city primarily liable for the damages assessed on account of the benefit that will result from the improvement to the public generally. The amount of those damages is $1,431.80. Ordinance 3477 prescribes the manner in which the sums assessed to individuals as benefits shall be collected by providing that judgments shall be rendered by the mayor in the name of the city, on which executions shall issue directed to the city marshal, to be by him executed. Ordinance 3790 confirms the verdict of the jury in the matter of opening South Twelfth street, and the mayor is directed to have that street opened when the damages, amounting to the sum of $15,398.20, assessed to individual owners, shall be collected and paid into the treasury, to meet and defray the

expenses caused to private property in opening and widening said street, and directs that the sum of $1,431.80 awarded against the city be paid. The plaintiff's action affirms the validity of all the proceedings that have been taken for the condemnation of his land. If these proceedings then are valid, what is there in the charter or the ordinances which have been cited which makes the city primarily liable for the damages assessed to individual owners for benefits accruing from the opening of the street? The mayor is not required to open the street until the damages assessed to individuals are collected. He is not required to appropriate or use the property condemned until the damages are collected. We are not now inquiring whether the plaintiff would be entitled to any, or what remedy, in the event the city by her officers should fail to collect the damages assessed to him. This action is conceived in the idea that the condemnation of the property, and the confirmation of the inquest by the council without anything more, subjects the city immediately to an action for all the damages assessed by the jury when another mode of obtaining them is prescribed. It may be an injury to an individual to have his property condemned for the public use and then be compelled to wait for his damages, as the property in the meantime, if it be unimproved, cannot be applied to any beneficial purpose. In this particular case, however, the owner has not as yet been deprived of his property, and he is now receiving rent for it, and it also appears that as long ago as the 15th of August, 1846, an ordinance was passed, No. 1752, entitled an ordinance establishing the wharf, streets, alleys and public places by which South Twelfth street and a great many others were established, showing that said street would necessarily cover the ground now condemned for that purpose. It appears from the facts that the city in this matter is acting in good faith, her object being not to avoid the assessment because she is dissatisfied with it, but doubts have arisen about the regularity of the assessment, and some of the individuals assessed for benefits have contested the matter and actually enjoined her from

collecting them, so that should there be a recovery against her in this action, she might not be able hereafter to collect them from the individuals to whom they have been assessed.

Although, from the view we take of this matter, it is not necessary to determine the question whether the city can dispute the regularity of the proceedings of her agents in condemning the land of the plaintiff, as we are of the opinion that had the regularity of the assessment been beyond question she would not have been liable to this action; yet, as other suits have grown out of this assessment, and as the matter has been discussed, we deem it advisable, with a view of ending all the litigation arising from this source, to give an opinion in relation to the propriety of the proceedings had for condemning the land of the plaintiff.

Proceedings to deprive an individual of his property without his consent, or to impose a tax against his will, are *stricti juris*, and those who take them should see not only that they have a foundation in law for their beginning, but that they are also conducted in strict conformity to the requirements of the statute which authorizes them. This is a clear principle of our law, and its observance is necessary even from prudential considerations, were it not recommended by others of more weight. By ordinance 3548 the mayor was empowered and directed to open South Twelfth street in accordance with the requirements of the amended city charter, and in conformity to city ordinance 1752, establishing that street as a public highway. Accordingly notice was given in pursuance to the amended city charter, and on the day appointed for the meeting of the jury nothing was done but to receive proof that the notice had been published as required and the proceeding was adjourned to the 6th of November following. On that day the parties appeared by their attorneys, as the report states, and the jury was sworn, who, having made some progress, the matter was adjourned until the 10th of November. On that day the parties appeared by their attorneys, and the jury having inspected the premises sought to be condemned under ordinance 3548, suggested to the

court for the benefit of all parties interested a change in the line of South Twelfth street, which being considered by the mayor, it was ordered that the jury be discharged and the proceedings were continued until the 9th of December. On that day the parties appeared by their attorneys and a jury, consisting of the same persons as the former jury, was sworn and progressed under ordinance 3752. This ordinance adopted the suggestion of the jury, and was passed 5th of December, 1856, during the interval between the adjournment from the 10th of November until the 9th of December. From the 9th of December the proceeding was adjourned from time to time until the 29th of December, when a final report was made by the jury; the journal, except on one occasion, stating that the parties appeared by their attorneys to the various adjournments. We are of the opinion that in a matter like that under consideration, the formal entry by the officer that the parties appeared by their attorneys, unless all the parties are named of record, cannot supply the want of notice. Parties are unknown, and it is impossible to know who are parties to the proceeding until the jury has reported. Men never dream that they are interested but as one of the public, and never learn that they are parties until, to their surprise, they find that they have been assessed for a benefit. Under this state of things the legal notice required by the charter cannot be waived. The appearance of the mostly interested cannot affect the interest of others, and the only security for the regularity of the proceeding is in a strict compliance with the law. What is remarkable in this matter, is, that the mayor should be of the opinion that the change in the line of the street suggested by the jury could not be made without the authority of an ordinance, and after the ordinance was passed that it was necessary to swear again the jury, and yet, after this was done, that the proceedings could be continued without a new notice. The proceedings were commenced under one ordinance directing the street to be opened, and before they were finished the lines of that street were altered by another ordinance, and

yet the proceedings, though in conformity to the latter ordinance, were continued under the original notice which required them to be under the former one. In a matter of this kind, where all the owners of the property benefitted by the opening of a street are to be taxed, it is impossible for the courts to ascertain how the variation of the line of the street will affect them. We cannot say that the alteration was not a material one; the circumstances forbid it. Some who might have acquiesced in the street as originally established, would have objected, perhaps, had they been aware of the change. The history of this proceeding shows how unwise it is to depart one iota from the law in condemning property for public use, when a few of the neighbors are by the law compelled to pay for the property condemned. The seeds of litigation in such cases will be soon broadcast, where any ground is given for the opinion that the requisite legal steps have not been taken in order to condemn the property and to assess the benefits. We are of the opinion that after the line of the street as originally established had been changed by an ordinance passed subsequently to the beginning of the proceedings to condemn private property for public use and to assess benefits, the mayor could not proceed under the original notice, but the proceeding first commenced should have been abandoned, and a proceeding *de novo* should have been had under another notice such as is required by the amended charter.

The judgment is reversed. The other judges concur.