IN RE TWENTY-THIRD STREET TRAFFICWAY,
Kansas City, v. L. T. CRUTCHER et al., Appel-
lants.

In Banc, July 7, 1919.

1. **STREET IMPROVEMENT: Elimination of Part of Ordinance
Plan.** Under the charter of Kansas City, an ordinance may provide
for the widening and grading of a street, and the grading of in-
tersecting streets, as a part of a general scheme to establish one
continuous trafficway, "all as one general improvement," and a
circuit court cannot ignore or alter any material part of such
ordinance; and where the ordinance provided that thirteen in-
tersecting streets should be graded or regraded so as to consti-
tute approaches to a trafficway, the court had no authority, in an
attempt to ascertain the damages and benefits, to receive a verdict
or render a judgment which eliminated four of the intersecting
streets from consideration.

2. ———: **General Improvement: Instruction for Separate Verdicts.**
Where the charter and ordinance provide for one general im-
provement of a highway, crossed by thirteen streets, it is error
to instruct the jury that the damages and benefits from the grad-
ing of the highway and each intersecting street are to "be con-
sidered and determined separately" and that thirteen separate
verdicts are to be rendered.

3. ———: **Instruction To Disregard Testimony.** In so far as an in-
struction attempts to direct a jury to exercise their own judgment
as to the damages and benefits free from any connection with the
testimony, it is error.

4. ———: **General Improvement: Individual Benefit to Lot: Separate
Assessment.** Where the charter and ordinance unite all elements
of the street improvement into one general improvement, it is
error to instruct the jury that they "have no right to assess any
lot to pay for any of the proposed street improvements, except for
such improvement as will actually benefit the particular lot," or
that they "have no right to assess any greater sum against any
lot than it will be actually benefited by the particular improve-
ment." The improvement being a general one, no attempt should
be made to accredit any one portion of the improvement with
benefits apart from the others, except to separate the grading
benefits from the condemnation benefits.

5. ———: ———: Damages Exceeding Benefits: As to Particular Lots. Where the court has told the jury that the proposed street improvement is necessary as a matter of law, and that if they find the entire damages exceed the benefits they should go no further, but so report, another instruction telling them that if they find that "the total benefits from the proposed grading of any intersecting street do not equal the amount of damages to lots on such street, then you need to proceed no further as to such intersecting street," is error, in that it conflicts with the other correct instruction, and besides is contrary to the law governing such cases.

6. ———: Damages to Non-Abutting Property. Where the charter and ordinances made 23rd Street and the intersecting streets one for the purpose of the improvement, an instruction telling the jury that only property abutting on 23rd Street is entitled to damages is error, the evidence tending to show that the deep cut in 23rd street deprives the owners of property abutting on the intersecting streets of vehicular access thereto.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson*, Judge.

REVERSED AND REMANDED (*with directions*).

*Clarence I. Spellman* and *John G. Park* for appellants.

(1) The court erred in overruling appellant's motions for new trial and in arrest of judgment. The judgment did not respond to the charter and ordinance and established a different public improvement to that authorized by charter and ordinance. (a) Article 6, Section 16, is legal. Kansas City v. Woerishoeffer, 249 Mo. 1; Wells v. Street Commissioners, 187 Mass. 451, 455; Sears v. Street Commissioners, 180 Mass. 274, 62 L. R. A. 144; In re Third, Fourth and Fifth Avenues, 49 Wash. 109; City of Springfield v. Green, 120 Ill. 269, 273. (b) The elimination of four approaches destroyed the identity of the plan. The verdict and judgment did not conform to the charter and ordinance. Shaffner v. St. Louis, 31 Mo. 264. (c) The charter and ordinance should have been strictly pursued. Leach v.

Cargill, 90 Mo. 316; St. Louis v. Koch, 169 Mo. 587, 591; Westport v. Mastin, 62 Mo. App. 647. (d) If one part of a general improvement fails, the entire improvement fails. City of Bloomington v. Reeves, 177 Ill. 161, 168. (2) The court erred in giving instruction 6, which told the jury that they must write "or cause to be written 13 separate verdicts as to the damages and benefits, one for each proposed improvement." The improvement was an entirety, not a combination of units. Authorities above. (3) The court erred in giving instruction 10, which told the jury that the damages and benefits, if any, from the grading of Twenty-third Street, and of each of the intersecting streets, must be considered and determined separately, as to each of such streets. Where a single improvement consists of distinguishable parts made one by lawful municipal action, damages and benefits must be assessed on account of the improvement as a whole, and not on account of certain of its parts. In re Third, Fourth and Fifth Avenues, 49 Wash. 109; Alden v. Springfield, 121 Mass. 27; Lincoln v. Dore, 176 Mass. 210; City of Bloomington v. Reeves, 177 Ill. 161, 168. (4) The court erred in giving to the jury instruction 11. Kansas City v. Max (In re 6th Street), 207 S. W. 503. (5) The court erred in giving instruction 13, which told the jury, in effect, that they must minutely analyze the improvement and assess only such benefits against property in the benefit district as they could directly trace to a "particular improvement." Authorities above. (6) The court erred in giving instructions 14 and 15, which converted the proceeding from "one general · public improvement" into a group of 13 independent improvements. (7) The court erred in giving instructions 16 and 17, which told the jury that only persons whose property abutted on Twenty-third Street might recover damages for such regrading. (a) They misled the jury as to the issues to be tried. (b) Appellants entitled to recover for being cut off from the outside world. They had easements of access. Thurston v. St. Joseph, 51 Mo. 510; Glaessner

v. Brew. Association, 100 Mo. 508; Heinrich v. St. Louis, 125 Mo. 424, 427; Press v. Penny & Gentles, 242 Mo. 98, 103; Gaus v. Railway, 113 Mo. 308, 315; Schopp v. St. Louis, 117 Mo. 131, 135; Versteeg v. Railway, 250 Mo. 61, 75; Rourke v. Railroad, 221 Mo. 46, 60; Downing v. Corcoran, 112 Mo. App. 645; Putnam v. Railroad, 182 Mass. 351, 353; 1 Lewis on Em. Dom. (3 Ed.), secs. 206, 121, 123; 2 Elliott on Roads and Streets (3 Ed.), sec. 1181; Dantzler v. Railway, 141 Ind. 604, 34 L. R. A. 769; Borghart v. Cedar Rapids, 126 Iowa, 313. Immaterial that complainant's property was not directly in front of the obstruction. Powell v. Railroad, 135 S. W. (Tex.) 1153; Sweeney v. Seattle, 57 Wash. 678; Rigney v. Chicago, 102 Ill. 64; C. Hacker v. Joilet, 192 Ill. 415, 425; City of Joliet v. Blower, 155 Ill. 414; Burr v. Leicester, 121 Mass. 241; Vanderburgh v. Railroad, 98 Minn. 329, 6 L. R. A. (N. S.) 741; Dairy v. Railroad, 113 Iowa, 716; Winetka v. Clirord, 201 Ill. 475; Mellor v. Philadelphia, 160 Pa. St. 614.

*E. M. Harber*, City Counselor, and *J. C. Petherbridge*, Assistant City Counselor, for respondents.

(1) In this proceeding thirteen different improvements were combined in one ordinance and hence in one proceeding for convenience and in order to save time and expense. There could have been thirteen separate ordinances and all filed in one proceeding, or thirteen separate ordinances and thirteen separate proceedings, or one proceeding combining all the improvements. In any event, there would have to be thirteen separate judgments, as happened in this case. (2) It was necessary to have thirteen separate verdicts—one for each improvement—because the procedure and rules for the condemnation of land to widen Twenty-third Street, is governed by Article 6 of the charter; and the procedure and rules for assessing damages and benefits for the change of grade on Twenty-third Street and the itersecting streets, is governed by Article 7 of the charter. The two procedures are entirely different—

one relates to condemnation matters and the other to damages arising on account of the change of grades of streets. But the same jury, the same court, at the same time, may try all of them, as authorized by the practice, under the charter. (3) The instructions were not erroneous but in perfect harmony with the charter and the theory on which the proceeding was bottomed and tried. (4) The ordinance filed in this cause is a pleading and is considered the petition, with thirteen different counts to be construed and decided separately as if there were thirteen different suits. City of Tarkio v. Clark, 186 Mo. 297; Sec. 1971, R. S. 1909; K. C. Charter, 1908, sec. 12, art. 7, p. 304. (5) Lots not abutting on Twenty-third Street were not entitled to damages on account of the change of the grade of Twenty-third Street. Hence the property on Fairmount Avenue and Terrace Place, about which complaint is here made (not abutting on Twenty-third Street) was not entitled to damages on account of the change of grade on Twenty-third Street, although by the grading down of Twenty-third Street the property on such intersecting streets may be shut off entirely from access thereto by way of Twenty-third Street. Gardner v. St. Joseph, 96 Mo. App. 661; Burde v. St. Joe, 130 Mo. App. 453; Rude v. St. Louis, 93 Mo. 408; Wallace v. Railway Co., 47 Mo. App. 491; Stephenson v. Railway, 68 Mo. App. 642; Clemens v. Conn. Mut. Life Ins. Co., 184 Mo. 46; Knapp, Stout & Co. v. St. Louis, 153 Mo. 560. (6) The refusal of the jury and trial court to allow any damages for changing the grade on the two cross streets, is no legal bar to grading such streets down to meet the new grade of Twenty-third Street, if the property-owners desire to have such grading done.

*R. H. Field* for respondent.

(1) The verdict is in accordance with the evidence as to damages and benefits from the proposed grading. (2) The jury were not required nor authorized to

make a verdict for damages as to Fairmount Avenue or Terrace Place in the face of their finding of the fact that the damages exceed the total amount of benefits to the city and public at large, and the private property within the benefit district. And the jury were authorized to limit the assessment of special benefits against only two-fifths of the private property in the prescribed benefit district ,and to leave out the remaining three-fifths of the private property in the benefit district unassessed. Kansas City v. Baird, 98 Mo. 221; Kansas City v. Bacon, 147 Mo. 281; Kansas City v. Bacon, 157 Mo. 474; St. Louis v. Brown, 155 Mo. 559. It was never intended to require a jury to render a verdict for damages from a proposed street grading, under Article 7 of the Charter, where the benefits did not equal the damages. It would certainly have been a vain thing for the jury to have made a verdict finding amount of damages from the proposed grading of Fairmount Avenue and Terrace Place, when they could not find the benefits to the city and the property in the prescribed benefit district in an amount equal to the amount of the damage therefrom. (3) Appel-- lants' brief does not assign any error of fact in the find-- ing of the jury that the damages from the proposed grad- ing of Fairmount Avenue and Terrace Place exceeds the benefits to the city and the private property in the benefit district. Appellants' complaints here are that they have been deprived of a recovery of the damage to their property on Fairmount Avenue and Terrace Place, suffered from the proposed change of grade of Twenty- third Street, a thing not alleged nor included in their claims in question filed in this cause. The claims for damages from the proposed grading of Fairmount Ave- nue and Terrace Place, filed by appellants, were for the proposed change of the grade in Fairmount Avenue and Terrace Place, "in connection with the proposed Twenty-third Street Trafficway." Clements v. Yates, 69 Mo. 623; Knapp v. St. Louis, 153 Mo. 560; Fuess v. Kansas City, 191 Mo. 692. (4) Appellants are wrong in their contention that all or none of the proposed

improvements under this ordinance must go through, because they are combined in the same ordinance as one general improvement. Section 16 of Article 6 of the Kansas City Charter, relied on by appellants, does not sustain appellants' view of this matter. This section of the charter covers mere matters of procedure only. It merely gave the city the option, in a case like this, where the thirteen improvements are combined in one general ordinance. (5) The finding of the jury on the one issue, to-wit, that the damages on the proposed grading of Fairmount Avenue and Terrace Place exceeds the benefits to both the city and the private property in the benefit district, shows that the jury ignored all of the instructions complained of in appellants' brief. And for this reason the judgment should not be reversed for errors, if any, in said instructions. It is firmly settled, and particularly in condemnation cases, that a judgment will not be reversed for error in any instruction when it is clear that the jury were not prejudiced, nor affected by such instruction. St. Louis v. Lannigan, 97 Mo. 175; Kansas City v. Block, 174 Mo. 434; St. Louis v. Brown, 155 Mo. 567; Edwards v. Mo. Pac. Ry., 82 Mo. App. 484. (6) The instructions numbered 16 and 17, excluding appellants' right to damages to property not abutting on Twenty-third Street for the grading of Twenty-third Street, are in direct accordance with the following decisions in this State. Rude v. St. Louis, 93 Mo. 408; VanDevere v. Kansas City, 107 Mo. 83; Knapp v. St. Louis, 153 Mo. 560; Clements v. Ins. Co., 184 Mo. 46; Gardner v. City of St. Joseph, 96 Mo. App. 657.

WALKER, J.—Appellants seek a review by appeal from a judgment of the Circuit Court of Jackson County in proceedings under the Charter of Kansas City, and Ordinance No. 28181, entitled, "An ordinance, to open, widen and establish Twenty-third Street from the east line of New Brook Street to the westerly line of Southwest Boulevard, and condemning the necessary

lands therefor; providing for and authorizing the work of grading and regrading Twenty-third Street as widened, Fairmount Avenue, Benton Place, Terrace Place, Mercier Place, Circle Avenue, East Street, Holly Street, West Prospect Place, Belleview Avenue, Monitor Place, Madison Avenue and Summit Street, condemning an easement to support an embankment or fill, all as one general public improvement, to be known as the Twenty-third Street Trafficway, 'and providing for the cost of said improvement, and authorizing the issuance of condemnation fund certificates, and repealing Ordinance No. 26318, approved June 1, 1916.''

Appellants own property on Terrace Place and Fairmount Avenue, streets intersecting Twenty-third Street, which, by the judgment of the circuit court, were eliminated from the improvement. It is contended that vehicular ingress to and egress from appellants' property will be destroyed by reason of the failure to improve these streets; that the trial court's judgment thereby abrogated the ordinance in part and established an improvement not designed or approved by the municipal authorities, and one which, without compensation, will destroy the value of appellants' property.

November 21, 1916, Kansas City filed in the office of the Circuit Clerk at Kansas City a petition for the appointment of commissioners, together with Ordinance No. 28181, and the plats and maps required by the charter. The proceeding was brought to ascertain damages and benefits arising from the establishment of the general public improvement, described in the title to the ordinance, which was enacted under Section 16 of Article 6 of the Charter of Kansas City of 1909 (p. 277), and is as follows:

''Sec. 16. When the grading or regrading of any public highway or the grading or regrading of any highway and highway or highways intersecting therewith, or the construction of tunnels, subways or viaducts in, under or upon said public highway or highways, or the taking of private property by condemnation for

In re 23rd Street v. Crutcher.

widening, opening or extending any such public highway or highways, any or all of said improvements shall be deemed by the common council to be part or parts of one general public improvement, the common council shall have the power to provide for the same in one and the same ordinance or by separate ordinances. Said ordinance or ordinances may provide for establishing or re-establishing the grade of such public highway or intersecting highway or highways or part or parts thereof, and may provide for such grading or regrading by means of cuts, fills, or viaducts, and may provide for building subways or tunnels, and may, in the same ordinance and as a part of the same general public improvement, provide also for the condemnation of private property taken or damaged by such proceeding. Such ordinance or ordinances shall in such case provide also for the payment of compensation for private property so taken or damaged either out of the general fund of the city or by special assessments upon a benefit district, or by both; the damages, if any, caused by such public improvement may be ascertained in one court proceeding or by separate court proceedings in the Circuit Court of Jackson County, Missouri, at Kansas City, as may be provided by ordinance, and all procedure for the ascertainment of damages, the service of notice, and the making of special assessments shall be conducted under such section or sections of this article or of Article VII of this charter, as the ordinance or ordinances shall provide. Such ordinance or ordinances shall provide the method by which the damages awarded in such proceeding or proceedings shall be paid, and if said damages are to be paid by special assessment upon a benefit district, said ordinance or ordinances shall fix the boundaries of said district," etc.

The portions of Ordinance No. 28181, pertinent to the matter at issue, are as follows:

Section 1 describes the land to be condemned for the widening of 23rd Street.

17—279 Mo.

Section 2, that compensation for private property so condemned is to be raised by an assessment against property within the benefit district described therein, and an assessment against Kansas City, of which not exceeding $50,000 of the proceeds of the sale of Twenty-third Street-Trafficway bonds theretofore authorized by the voters of Kansas City, may be paid as a part of the assessment against the city at large for land taken or damaged.

Section 3, that Twenty-third Street, Fairmount Avenue, Benton Place, Terrace Place, Mercier Place, Circle Avenue, East Street, Holly Street, West Prospect Place, Belleview Avenue, Madison Avenue, Monitor Place and Summit Street should be regraded to the established grade thereof between lines described.

Section 4 has reference to the cost of regrading intersecting streets.

Section 5, that the construction cost of the regrading of Twenty-third Street is to be spread over the entire benefit district and a suit brought under Article 8, Section 28, of the charter to test its validity.

Section 6, that owners of property damaged by reason of the change in the grade of the streets to be regraded, and not having waived claim thereto, shall have their damages ascertained and assesssed as provided in Article VII of the Charter of Kansas City, and that such damages be raised by assessments against the city and against private property within the benefit district described in said ordinance and in the manner authorized by Article VII of the charter.

Section 7 describes the benefit district, against which the damages arising from the opening and widening of Twenty-third Street and the grading and regrading of the various other streets shall be assessed as benefits.

Section 8 provides for retaining walls on Twenty-third Street, and Section 8½ for an easement for embankments where the proposed streets are above the level of abutting property.

Section 9, that Twenty-third Street, when widened and graded, and a viaduct is built by Kansas City, from the Wyandotte County, Kansas, High Line Bridge, over the Kaw River, connecting with Twenty-third Street at the intersection of New Brook Street, shall, when complete, constitute the "Twenty-third Street Trafficway," and is by said ordinance established as such.

Section 10, that the improvements therein provided for have been approved and recommended by the Board of Public Works of Kansas City, Missouri, by a resolution previously adopted.

Section 11, that the council found and declared that the Board of Public Works had caused plans and specifications to be prepared, "which shows the location and description of the general public improvement herein provided for as a whole," and that all of the improvements provided for in the said ordinance, including the widening of Twenty-third Street, shall be deemed parts of one general public improvement, to be known as "Twenty-third Street Trafficway," as authorized in Section 16 of Article 6 of the Charter of Kansas City, Missouri, 1909, and that said improvements are thereby provided for and authorized, and the ordinance referred to the resolutions of the Board of Public Works, setting out the plans and specifications of the said improvement.

Section 12 defines the court proceedings.

Section 13 has relation to condemnation fund certificates, and provides that: "The Common Council hereby determines that the assessments to pay for property taken or damaged, as provided by Article 6, of the Charter of Kansas City, for the widening of Twenty-third Street, which have not been voluntarily paid within sixty days from the final confirmation of the verdict in the proceedings instituted to determine the amount of said assessments, shall be paid in ten equal annual installments bearing seven per cent interest per annum, for which the city treasurer shall issue

condemnation fund certificates equal in amount to such unpaid assessments, which certificates shall be sold by the Board of Public Works of Kansas City as provided by Section 22 of Article 6 of the Charter of Kansas City and the provisions of Sections 22, 23, 24, 25, 26 and 27 of Article 13 of the Charter of Kansas City shall apply thereto and govern the same as far as applicable. Said certificates shall be known as and called the 'Twenty-third Street Trafficway Condemnation Fund Certificates, Series 1,' and shall be in such form as may hereafter be fixed by ordinance. The Board of Public Works shall sell such certificates at such price, not less than the face value of the amount of the special assessments, excluding interest represented by said certificates, as may be obtainable, and shall determine the manner and means of such sale. Such certificates shall be delivered by the city treasurer to the purchaser, upon payment therefor, on the order of the Board of Public Works, specifying the price which order shall be countersigned by the comptroller. The proceeds of such certificates shall be used for the payment of land taken or damaged by said improvement. Such certificates may, by agreement, be issued direct in payment for said land taken or damaged, arising from said condemnation proceedings.

"The Common Council finds and declares that the Board of Public Works of Kansas City has heretofore, by Resolution No. 4837, adopted May 8, 1914, recommended that the Common Council provide, by ordinance, that the assessment to pay for property taken or damaged shall be made in ten equal annual installments, and that condemnation fund certificates equal in amount to the unpaid assessments, as provided by Articles VI and XIII of the Charter of Kansas City, be issued therefor."

Section 14, that Kansas City shall not be liable to pay for work required to be paid in special tax bills.

Section 15, declaring the repeal of the former ordinance.

Appellants' property is located on Fairmount Avenue and Terrace Place. We are concerned, therefore, with the judgment so far as it affects those streets.

The west bluff of Kansas City at Twenty-third Street is about eighty-five feet above the Kaw River, or the "West Bottoms." A new diagonal thoroughfare named "New Brook Street," extends along the bluff about twenty-five feet above this "bottom." To open Twenty-third Street on a plane from Southwest Boulevard to New Brook Street will necessitate a cut whose maximum will be about sixty feet between Fairmount Avenue and the present bluff. Twenty-third Street extends from the bluff eastward, and is now graded and open for travel and is paved from Terrace eastward, but must be regraded to connect with Brook Street. The streets intersecting it, from New Brook Street eastward, are in order, Fairmount Avenue, Terrace Place, Mercier Place, Circle Avenue, East Street, Holly Street, West Prospect Place, Belleview Avenue, West Madison, Madison Avenue, Summit Street. These are to be graded or regraded, but are now open and in use from Twenty-third Street in both dirctions. The present grade of Terrace from Twenty-third Street southward to Twenty-fourth Street is 12.45 per cent descent, and that of Fairmount from Twenty-third Street to Twenty-fourth Street is 15.47 per cent descent. Householders on those intersecting streets must now approach their homes with loaded vehicles *via* Twenty-third Street and down the respective grades on Terrace or Fairmount, and when leaving their homes must go southward over their respective streets to Twenty-fourth Street. These streets are so deep that wagons and vehicles must move southwardly down hill; they cannot move northward.

The proposed changes in grade in Twenty-third and in the intersecting streets are relatively slight from Southwest Boulevard westward until Mercier Street is reached. Here, the proposed grade practically meets the present grade. From this point proceeding west, Twenty-third Street, as proposed, will decline toward

New Brook Street on a grade of 3.17 per cent, whereas, the present surface of Twenty-third Street rises gradually, going west from Mercier Street, and the intersecting streets now conform to it, so that the greatest divergence between the present and proposed grades are at the extreme west end near Fairmount and Terrace. One of the appellants named Doarn owns the property extending from Terrace to Fairmount, on the south side of Twenty-third Street, except twenty-five feet at the alley intersection. The cut in Twenty-third Street at Terrace Place will be 25.4 feet, whilst the cut at Fairmount Avenue on its east line will be 41.1 feet, on its west line 42.6, and at the alley between Fairmount and New Brook Street, the cut will be 44.7 feet. The cuts in front of property on Terrace and Fairmount Avenue adjacent to Twenty-third Street, when the grade of those streets is brought down to meet the new grade of Twenty-third Street, will be correspondingly severe. The ordinance provides for deep cuts on Fairmount Avenue and Terrace Place, but easy grades to both Twenty-third and Twenty-fourth Streets. The verdict and judgment established the deep cut in Twenty-third Street, but by a finding that the damages exceeded the benefit abrogated the grading at Fairmount and Terrace so as to connect with Twenty-third Street, without providing for easier access from Twenty-fourth. This having been done, appellants' property, will, they contend, be shut off from the outside world, if the judgment is affirmed; and that the property of one of the appellants (Doarn's) will be on the edge of a canyon, 25.4 feet deep at the east end of his property and 41.1 feet deep at the other, if the regrading of the intersecting streets promised him be withheld.

The purpose of the proposed widening of Twenty-third Street was to afford an approach to a high line viaduct to be constructed between Kansas City, Missouri, and Kansas City, Kansas.

After the resolution was adopted, upon which the ordinance providing for this improvement was based, notice was published, describing the proposed improve-

ment and inviting property owners interested to examine the plans of the proceedings and present their views thereon. A public hearing for that purpose was held in the office of the Board of Public Works, and was attended by appellants and others. The plans revealed that while Twenty-third Street would suffer a great cut at the west end, Fairmount, Terrace and the other intersecting streets were to be brought down to meet the new Twenty-third Street grade, and that increased and facilitated means of ingress to and egress from appellants' property would be afforded, and on easier grades. While adjacent property would be left substantially higher than the new street grade, the new trafficway would improve the ingress and egress by Twenty-third Street and increase the utility of Twenty-fourth Street by reducing the grades and making them easier; and Fairmount and Terrace Streets would become two-way streets instead of one-way streets, as now. After examination, the Board of Public Works adopted a resolution approving plans for the grading of Twenty-third Street, as widened, and of the intersecting streets, "all as one general improvement to be known as the Twenty-third Street Trafficway."

Each of the appellants filed his claim in writing, setting out that the building of this trafficway and the change in grade of intersecting streets, as provided in said ordinance and plans, would cause his property to be damaged, etc.

Kansas City introduced in evidence Ordinance No. 28181, the maps and plats filed with it, the bond ordinance, and the judgment record in the cause filed in the Circuit Court of Jackson County, Missouri, at Kansas City, styled, "In the matter of determining the validity of ordinance of Kansas City, Missouri, No. 28181, approved November 4, 1916, and the proposed tax lien thereunder for the cost of grading Twenty-third Street, as widened from the east line of New Brook Street to the east line of Jefferson Street." This case was filed concurrently with Ordinance No.

28181, and bears the next succeeding number in the clerk's office. It was brought under the provisions of Section 28 of Article 8 of the Charter of Kansas City of 1909, which provides that after the passage of the ordinance for constructing a viaduct and an approximate estimate of the cost of the work, the city shall file a proceeding in the circuit court in its name against the respective owners of property chargeable with the cost of the improvement. This ordinance was passed and approved, and the approximate estimate of the cost of the work made. It defines and sets forth the limits of the benefit district, and closes with a prayer that the court find and determine the validity of that ordinance and as to whether or not the respective tracts of land in the benefit district shall be charged with the lien of the work.

This validity-testing ordinance case came on before the court for hearing January 3, 1917, several days before the trial of this case began, and a judgment was entered which, among other things, recited that "the court finds, orders and adjudges that Ordinance of Kansas City No. 28181, approved November 4, 1916, entitled: An ordinance to open, widen and establish Twenty-third Street from the east line of New Brook Street to the westerly line of Southwest Boulevard and condemning the necessary land therefor; providing for and authorizing the work of grading and regrading Twenty-third Street, Fairmount Avenue, Terrace Street, etc., is in all respects valid and legal; and that the work be done in the manner and to the extent provided in said ordinance and a contract for said work, and that the same be paid for in special tax bills was expressly authorized." The judgment further provided that the proposed lien of the special tax bills for said work should be a valid lien against the property assessed to pay for said work.

Oral testimony was offered by Kansas City, showing that the Twenty-third Street Trafficway was a necessity; that the proposed depression in Fairmount Ave-

nue, to meet the new grade, will make cuts in front of private property on Fairmount, ranging from less than one foot near Twenty-fourth Street to forty feet at Twenty-third Street, and on Terrace Street 26.8 feet at Twenty-third, tapering out to nothing near Twenty-fourth Street.

Each claim for damages by change of grade was given a number and considered in connection with the street upon which the tract abutted. If a tract was on the corner of Twenty-third Street and one of the intersecting streets, it had two numbers and was considered in connection with Twenty-third Street as well as such intersecting street. The city introduced real estate expert appraisers who inspected the various pieces of property involved. These expert witnesses agreed that lots on Terrace and Fairmount Avenue would sustain damages by the proposed change in grade in Twenty-third Street and the intersecting street, caused by this improvement. They also testified that the damages would be $24,288.53 to claimants on Fairmount Avenue, and $21,020.62 to those on Terrace Street.

Appellants' witnesses estimated the damages at $65,032.70, and explained the reasons therefor, that unless the intersecting streets were graded as planned in the improvement, the approaches to appellants' lots would be destroyed.

The following instructions given by the court are complained of:

Instruction No. 6 told the jury that they were to write thirteen separate verdicts in the case.

Instructions 10 and 13 told them they must separately assess the benefits arising from each particular improvement.

Instructions Nos. 14 and 15 told the jury that if the total benefits from the proposed grading of any of the intersecting streets do not equal in dollars and cents the amount of damage to the lots on such side street, the jury need proceed no further as to such in-

tersecting street, except to so report to the court as to such intersecting streets.

Instructions Nos. 16 and 17, in effect, told the jury that only the property abutting on Twenty-third Street might recover damages from the grading of that street.

The jury made findings of damages and benefits as to each feature of the improvement specified in the ordinance, except as to the damages from the grading of Fairmount, Terrace, Holly and East Streets, and found that the damages exceeded the benefits upon each of such streets. No damages were awarded claimants on such four intersecting streets, the effect being to leave the improvement of such streets out of the proceeding entirely, but to sanction and approve all other features of the proposed improvement.

Claimants owning property on Madison, Summit, Monitor, Belleview, West Prospect, Circle and Mercier Streets, where the changes were relatively slight, were awarded damages, and the work ordered in the ordinance was authorized to be done, but the remaining four cross streets were left as before.

Appellants contend: (1) that, the improvement being "one general public improvement" must stand or fall as such; (2) that the charter and ordinance required the jury to ascertain and report the damages caused to appellants' property by the improvement as a whole and forbade a severance of the improvement into parts; (3) that the judgment was not responsive to the charter, to Ordinance No. 28181, nor to the resolutions of the Board of Public Works, and the court therefore was without jurisdiction to render it; (4) the city and property owners in the benefit district were estopped to question the validity of any portion of Ordinance No. 28181, because of the previous judgment, to which specific reference has been made in this statement. These contentions, to which may be added the objections to instructions given, embody appellants' assignments of error.

I.   Appellants insist that Ordinance No. 28181, with its accompanying documents, upon which this controversy centers, constitutes the petition in this case; and that but one cause of action was therein stated, which consisted of the contemplated improvement as an

Improvement As A Whole.

entirety.   The conclusion, although somewhat figurative in form, is not foreign to a practical interpretation of . the ordinance and finds support in City of Tarkio v. Clark, 186 Mo. 285, in which the facts were not dissimilar to those at bar, and the issues were sufficiently parallel to render the ruling at least persuasive.   Whether it be or not, the provisions of the ordinance interpreted in the light of the purpose of the improvement will enable it to be determined whether its provisions are to be construed together as component parts of a harmonious whole or as separable powers which may be enforced or abandoned, as the tribunal empowered to execute them may determine.   The ultimate purpose of the improvement was the establishment of a trafficway or great artery of transit between the two adjacent cities.   The municipal assembly clearly cognizant of the purpose in view, in framing the ordinance, employed terms therein comprehensive of the territory to be affected and specific as to the streets.   It was therefore not the improving of Twenty-third Street, and in addition any of the intersecting streets, less than the entire number enumerated, that was to constitute a compliance with the ordinance, but of Twenty-third Street, and all other intersecting streets named.   To illustrate:   The ordinance provided that eleven intersecting streets should be graded or regraded so as to constitute approaches to the proposed trafficway.   The verdict and judgment of the circuit court eliminated four of these, to-wit, Fairmount Avenue, Terrace Place, and Holly and East Streets.   This constituted but a partial enforcement of the ordinance, in that it construed its provisions, not as constituting one improvement, but as being separable, and capable of enforcement by piecemeal, at the dis-

cretion of the court. The ordinance, measured by every rule of construction, which includes not only its evident purpose, but its context and subject-matter, was not thus intended to be enforced. If the intersecting streets named could be omitted, then all of same could have been omitted. That it was intended, therefore, that the separate improvements comprised in the ordinance should constitute an entirety, seems beyond question. This being true, the circuit court had no authority to receive a verdict or render a judgment which ignored any of the essentials of the ordinance required to be included therein. As applied to the facts at bar, the court could not in the ascertaining of damages and benefits eliminate from its consideration the four intersecting streets named.

Section 16 of Article 6, Charter of Kansas City, 1909, set forth in the statement, under which it was sought to ascertain the damages and benefits, has been construed in Kansas City v. Woerishoeffer, 249 Mo. 1, as authorizing an omnibus proceeding such as was rendered necessary by Ordinance No. 28181, where the purpose was to form one general public improvement.

Statutes of other States, similar in their material features to that at bar, have been upheld which provide for a combination in one proceeding of distinguishable public improvements.

In Wells v. Street Commissioners, 187 Mass. 451, 73 N. E. 554, there was a petition to quash special benefits on account of the widening and extension of Summer and Cove Streets, and the construction of the South Terminal Station in Boston, under a special statute combining those improvements. The court upheld the assessment, saying: ''The constitutionality of the statute was considered and affirmed in Sears v. Street Commissioners, 180 Mass. 274. We are all of opinion that the Legislature, in dealing with the benefits by the amount of which the assessment should be limited, well might treat the changes in the streets and the construction of the station as parts of a single

public improvement constituting one joint enterprise, bringing special and peculiar benefits to the estates in the vicinity."

In re Third, Fourth and Fifth Avenues, 49 Wash. 109, 94 Pac. l. c. 1078, similar to the instant case where the streets named were in one proceeding ordered improved by widening and cutting, it was stated: "Another point urged by appellants is that it was not lawful for the council to combine in one ordinance and as one improvement, two improvements so different from each other as the widening feature and the change of grade feature of this ordinance. We think this contention is not well taken. The ordinance relates to a unified subject, the improvement of certain streets, and it is immaterial that such subject is capable of subdivision. Appellants argue that, in levying the assessment, no lot should be assessed for any part of the widening except such as is benefited by the widening, and then only the amount of its benefit from that source. We think each lot should bear its share of the expense to the extent of the resultant benefits received by it from the improvement considered as an entirety. The widening and also the change of grade are simply elements which enter into the reasoning by which the final result is reached when fixing the amount of benefits to each lot."

In The City of Springfield v. Green, 120 Ill. l. c. 273, which was a proceeding providing for the pavement of a large number of streets and alleys, the Illinois Supreme Court said: "The ordinance is also assailed on the ground that it embraces more than one improvement. We do not think this is true, in point of fact. While many streets and parts of streets are embraced in the scheme of improvement adopted by the city, yet we regard them all as but parts of the same improvement. The city authorities, in adopting the ordinance, must have found, as a matter of fact, that these streets and parts of streets were so similarly situated, with respect to the improvement proposed to be made, as

to justify treating them as parts of a common enterprise and single improvement, and from the record before us we think they were justified in doing so."

As illuminative of the same doctrine under a different state of facts, see City of Bloomington v. Reeves, 177 Ill. 1. c. 168.

The ruling of this Court is apposite, in Shaffner v. City of St. Louis, 31 Mo. 264, based as it is upon facts similar to those at bar, and holding that a jury in ascertaining damages and benefits shall be limited to the ordinance authorizing the improvement. The court's opinion, expressed with that directness, characteristic of the style of Judge Scott, the writer, is, so far as pertinent to the issue here involved, as follows: "The proceedings were commenced under one ordinance directing the street to be opened, and before they were finished the lines of that street were altered by another ordinance, and yet the proceedings, though in conformity to the latter ordinance, were continued under the original notice which required them to be under the former one. In a matter of this kind, where all the owners of the property benefited by the opening of a street are to be taxed, it is impossible for the courts to ascertain how the variation of the line of the street will affect them. We cannot say that the alteration was not a material one; the circumstances forbid it. Some who might have acquiesced in the street as originally established, would have objected, perhaps, had they been aware of the change. The history of this proceeding shows how unwise it is to depart one iota from the law in condemning property for public use, when a few of the neighbors are by the law compelled to pay for the property condemned. The seeds of litigation in such cases will be sown broadcast, where any ground is given for the opinion that the requisite legal steps have not been taken in order to condemn the property and to assess the benefits. We are of the opinion that after the line of the street as originally established had been changed by an ordinance passed subsequently

In re 23rd Street v. Crutcher.

to the beginning of the proceedings to condemn private property for public use and to assess benefits, the mayor could not proceed under the original notice, but the proceeding first commenced should have been abandoned, and a proceeding *de. novo* should have been had under another notice such as is required by the amended charter. The judgment is reversed. The other judges concur.''

The Woerishoeffer case, 249 Mo. l. c. 31, heretofore referred to, distinguishes the Shaffner case, but not in regard to the ruling doctrine announced in the latter, that proceedings which deprive an owner of his property must be conducted in strict conformity with the act which authorizes them, and if not so conducted they are void.

In Leach v. Cargill, 60 Mo. 316, we held that proceedings of the nature here involved were *in invitum*, purely statutory, and hence to be strictly construed. Further, confirmatory of this ruling, we held in St. Louis v. Koch, 169 Mo. l. c. 591, that every material requirement of the statute authorizing such proceedings must be strictly complied with. It will suffice in the face of the facts, as construed in the light of the cases cited, to say that Ordinance No. 28181 did not contemplate in the construction of the trafficway the improvement of Twenty-third Street, to the exclusion of the improvement of the intersecting streets named.

II.   The court, in giving. Instruction 6, in effect, told the jury that they should ''write or cause to be written 13 separate verdicts as to the damages and benefits, one for each proposed improvement. These separate verdicts may, when written, be bound together,'' etc.   This was misleading.   There **Separate Verdicts.** were not thirteen separate improvements. There was but one general improvement as specified in Article 6, Section 16, of the Charter, and in the title and in Section 11 of Ordinance 28181.   While this constituted but a misdirection as to the mechanical preparation of the verdict, it was nevertheless error.

Instruction numbered 10, given by the court, told the jury "that the damages and benefits, if any, from the grading of Twenty-third Street and each of the intersecting streets proposed in this proceeding, must be considered and determined separately by the jury, as to each of such streets." Under the construction placed upon the ordinance authorizing this improvement, this instruction was calculated to mislead the jury. It was immaterial what the benefits might be from a particular part of the general improvement.

In re Third, Fourth, and Fifth Avenues, 49 Wash. 109, 94 Pac. 1075, 1078, construing a charter provision similar to ours, the Supreme Court of Washington held, "that in levying the assessment no lot should be assessed for any part of the widening except such as is benefited by the widening and then only the amount of its benefits from that source. We think each lot should bear its share of the expense to the extent of the resultant benefits received by it from the improvement considered as an entirety. The widening and also the change of grade are simply elements which enter into the reasoning by which the final result is reached when fixing the amount of benefits to each lot."

The improvement in the instant case was an entirety so far, at least, as it related to the change of the grade of Twenty-third Street and its intersecting streets. If any part of such grading was illegal, the whole must fail, as was held in City of Bloomington v. Reeves, 177 Ill. 168; if the conditions precedent had all been complied with, the improvement would have stood as a whole and the grading benefits to pay the grading damages assessed as a whole, because of the character of the improvement. As to the benefits assessed to pay the damages awarded for the lands taken in the condemnation proceeding, the charter and the ordinance in this case provide that they may be paid in ten annual installments; while the benefits assessed to pay the damages awarded for the change of the grade of the

various streets must be paid in sixty days from the confirmation of the verdict. Owing to the different times of payment fixed for each, the amounts of the two different benefit assessments can not be mixed and assessed as a whole, but must be kept separate by the jury in rendering its verdict and judgment thereon entered accordingly by the trial court.

To a like effect was the ruling in Alden v. City of Springfield, 121 Mass. 27, a proceeding to revise a special assessment because of a street opening, where the court said: "The question was as to the benefit to the petitioner's land by the whole construction of the street, and the petitioner had no right to introduce evidence as to the benefit resulting from any particular piece of work done in the course of such construction."

In Lincoln v. Street Commrs., 176 Mass. 210, which was a proceeding to quash a special assessment for constructing a system of sewers and establishing building lines in the City of Boston, in estimating the special benefits, the whole improvement was taken as one, instead of separating the items. The court said: "The statute seems to contemplate the course which was adopted, so that strictly the question would be, perhaps, whether the statute could not authorize it. But if we assume the statute to be neutral, the question is, whether it can be said as a matter of law, that the commissioners were not warranted in finding street, sewer, and building lines all to be portions of one improvement. We are of opinion that they were warranted in their finding. The different elements are combined in the unity of a single though complex design."

Instruction numbered 11, complained of, is as follows: "The jury are instructed that they are the sole judges of the credibility of the testimony offered in the case and the credit which should be given the testimony

of any witness who has testified in the case, and the jury are not bound to accept, against their own judgment and conviction, the statement or statements of any witness in the case as to

*Expert Testimony.*

damage or benefit to property from the proposed improvement.'' In so far as this instruction may attempt to authorize the jury to exercise their own judgment in the finding of a verdict free from any connection with the evidence, it is error and in conflict with the rule announced in In re Sixth Street, Kansas City, v. Morris, 276 Mo. 158.

It is complained that error was committed in the giving of sub-paragraphs (2) and (3) of instruction 13, which are as follows:

*Benefits to Particular Lots.*

''(2) The court instructs the jury. that they have no right to assess any lot or parcel of land, in the prescribed benefit district, to pay for any of the proposed street improvements, except for such of said street improvements, if any, as will actually benefit the particular lot or parcel of land assessed by the jury;

''(3) And the jury are instructed that they have no right to assess any greater sum against any lot or parcel of land in the prescribed benefit district than it will be actually benefited by the particular improvement for which the jury assesses the same.''

These sub-divisions are contrary to the spirit and intent of Article 6, Section 15, of the Charter, and Section 11 of Ordinance No. 28181, which was intended to unite all of these elements of improvement into one proceeding.

As contended by appellants, a single improvement can not be dissected and the benefits assessed or withheld according to technical reasoning, but must be assessed in view of the fact that the various elements are united in a single improvement.

The refinements of reason cannot split a ''general improvement'' into unbeneficial parts; and no attempt should be made to accredit any one portion of this

improvement with benefits apart from the others, except to separate the grading benefits from the condemnation benefits, as above stated.

Instructions 14 and 15 contain the same objection and will be considered together. They read as follows:

"14. If the jury shall consider and determine that the total benefits from the proposed grading of any of the intersecting streets do not equal, Excess of Damages Over Benefits. in dollars and cents, the amount of damage to the lots on such side street, then the jury need proceed no further as to such intersecting street, except to so report to the court as to such intersecting street or streets, if any.

"15. If the jury shall consider and determine that the total benefits from the proposed grading of Twenty-third Street do not equal, in dollars and cents, the amount of damage to the lots abutting on Twenty-third Street, then the jury need proceed no further, except to so report to the court as to said Twenty-third Street."

These instructions are subject to the criticisms heretofore stated, as applicable to other instructions, and are contrary to the law governing cases of this character. They contravene the last sentence of the instruction numbered one, which properly told the jury that they were "not at liberty to pass on the question as to whether there is a public necessity for the proposed proceeding, that being a matter within the discretion of the Common Council, which has already been determined." In other words, the court announced in this instruction that the improvement was necessary as a matter of law, while instructions 14 and 15, in effect, told the jury that they might find that portions of the improvements were not needed sufficiently to require paying for them.

In a former instruction, the jury had been given the whole law on the question of damages exceeding benefits, and told that if all of the damages should exceed the benefits, they should go no further, but report, etc. Instructions 14 and 15, therefore, conflicted

therewith, and relieved the jury of the necessity of finding that all of the benefits taken together exceeded all of the damages taken together, and authorized the jury to ignore any part of the improvement.

Instructions 16 and 17 contain the same error, and will be considered together. They read:

"16. The jury are instructed that the only property entitled to damages, if any, for the grading of Twenty-third Street, is the property abutting thereon, and that the property situated upon the intersecting streets in this proceeding, not abutting on said Twenty-third Street, is not entitled to any damages, if any, occasioned to such property by such grading of said Twenty-third Street.

Non-Abutting Property.

"17. The court instructs the jury that the owners of lands on the intersecting streets, not abutting on Twenty-third Street, are not entitled to any damage they may sustain by the proposed cut on Twenty-third Street."

Appellants contend that these instructions involve a misapprehension of the meaning and purpose of the charter and ordinance provisions, as applied to the case at bar.

The charter, Article 6, Section 16, gave authority for the improvement in this case of Twenty-third Street with intersecting streets for the purpose of opening, grading, regrading and the building of viaducts or tunnels, and Ordinance No. 28181 stated that it was drawn under authority of said article and section. The charter and ordinance made Twenty-third and the intersecting streets one for the purpose of the improvement, and the authorities which hold that the benefits need not be accredited to any particular part of the improvement, must be deemed to decide that the issue is, whether the complainant's property is damaged by the improvement as a whole. The authority of the charter cannot be dissipated and the ordinance frustrated by instructions based upon the immaterial issue of whether

property abutting upon the proposed improvement is damaged by one part of the improvement or another.

The land of all of the appellants was and will be affected by this general improvement. The improvement, under the limitations stated, is an entirety. If any part of same damages appellants, they are entitled to recover.

These instructions, therefore, are misleading and submit an issue not presented by the pleadings.

Appellants contend, and the facts show, that after the cutting down of Twenty-third Street, appellants cannot bring vehicles to their houses from the north via Twenty-third Street, because of the deep cut, and cannot bring them from the south because of the steep grade. Fairmount and Terrace will become *cul de sacs,* and appellants' property isolated; that these streets will be to all essential purposes vacated; that appellants have an easement in the access to their property, which this judgment erroneously destroys without compensation.

Glaessner v. Brewing Assn., 100 Mo. 508, was a suit brought to enjoin the Anheuser-Busch Brewing Association from constructing and maintaining a railroad on, over and across Broadway, Seventh and Ninth Streets in St. Louis, which run north and south. The track was to be laid between Dorcas and Arsenal Streets, which run east and west. Plaintiff's property was seventy or seventy-five feet north of the proposed railroad and on the west side of Broadway. His complaint was that the railroad diverted travel from the front of his premises and interfered with his easement of ingress and egress. The court held that plaintiff was entitled to a permanent injunction, saying: "That the public travel will and must be greatly obstructed is clear, and if such an ordinance as this is to be upheld there is no telling where such municipal legislation will end. The trust reposed in the City of St. Louis to regulate the use of the streets is for the purpose of keeping them open and free to all, and we can but

conclude that the ordinance in question violates that trust and is void. The city having no rightful authority to enact the ordinance, the switch tracks constructed thereunder on the public highway would be a public nuisance; and in order for the plaintiff to maintain this injunction he must show some special injury over and above the general injury to the public. Some of the evidence offered by the defendant is that the construction of the switch will not decrease the value of the plaintiff's property. On the other hand it is alleged and showed that plaintiff's property is within seventy-five feet of the proposed crossing, and the weight of the evidence is that these proposed crossings will have the effect to divert the travel to streets west of the brewery, and thereby decrease the value of the plaintiff's property, and take away some of the trade which he at this time enjoys. The evidence satisfied the trial court and it satisfies us that plaintiff will suffer an injury which entitles him to maintain this suit. The judgment is affirmed. All concur.''

In Downing v. Corcoran, 112 Mo. App. 645, plaintiff brought suit to enjoin defendant from placing and maintaining obstructions in a certain private road so that plaintiff's free use of the road was interfered with. The parties both required a way to the public road. The plaintiff made use of a passway, and afterwards, at the instance of defendant, it was converted into a private road and became free to the use of the public, but defendant prevented its use by obstructions. The Kansas City Court of Appeals held plaintiff entitled to the injunction, saying: ''In support of his objection to the conclusions of the trial court, defendant states several correct propositions of law and cites authority in connection therewith, but we are clear that the facts of the case leave them without just application. It is contended that plaintiff is not entitled to connection with a public highway at every point along his line. That may be granted, especially if having connection at every point would inconvenience some other

person.   But here, plaintiff had a right to reasonably convenient points of connection and it was wrong in defendant, without excuse or right  to prevent his use of such points, notwithstanding there possibly .may have been other places where defendant could have gotten through.''

In Putnam v. Boston & Providence Railroad, 182 Mass. 351, l. c. 354, the law is thus stated: ''It never has been held that one whose access to a general system of public streets in a city or town is entirely cut off, suffers only the same kind of damage by the discontinuance of a street as one of the public who is. merely obliged to travel further through public streets to reach his destination.  So to hold would be to extend too far the doctrine previously stated in this opinion, which as now established sometimes causes hardships, although it rests on sound principles and generally accomplishes justice. . . . We know of no adjudication, nor of any sound principle that precludes the petitioners from recovering such damages as they suffered from the deprivation of access from their property to the public streets as a necessary result of the change ordered by the aldermen.  It will seldom happen that the execution of such an order will cut off access in all directions to the public streets of a city, which before had been enjoyed as an attribute of the property. When it does happen, in a case in which the statute makes compensation for damages, such damages are recoverable.''

The rulings of our own and of other courts, upon the effect of the vacation of a street affording access to property, may be epitomized in the general rule announced in 1 Lewis on Em. Dom. (3 Ed.) sec. 206, p. 387, and sec. 123, p. 190, that the owner of property thus affected has a right of access in both directions which extends as far, at least, as the next connecting highway. A like doctrine is announced in 2 Elliott on Roads and Streets (3 Ed.), sec. 1181 and cases. The owner's remedy, when deprived of such a right, has

been clearly defined by this court in the following cases: Gorman v. Railroad, 255 Mo. 483; Press v. Penny & Gentles, 242 Mo. 98; Rude v. St. Louis, 93 Mo. 413. Cases pro and con are cited in the briefs of opposing counsel. We have reviewed these with some degree of care, reaching the conclusion that error was committed by the trial court in its rulings herein; and that this case should be reversed and remanded, to be proceeded with as herein indicated. It is so ordered.

All concur; BOND, C. J., in the result. WOODSON, J., absent.